CASE 45—PETITION ORDINARY—JUNE 9.

# Clemens v. Speed.

### APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. EASEMENTS—RIGHT TO LATERAL SUPPORT OF NEIGHBOR'S HOUSE.—
   One can not acquire an easement or prescriptive right to the lateral
   support of his neighbor's building when the building of each owner is
   altogether upon his own land.

2. SAME.—If the owner of a house finds it necessary to pull it down and
   remove the foundation of his building, and he gives notice of his
   intention to the owner of the adjoining house, he is not answerable for
   the injury which the owner of that house may sustain by the operation,
   provided he remove his own with reasonable and ordinary care. And
   this is true, although the houses are built with a party. wall, provided
   there is no interference with the wall.

3. SAME.—While the general rule is that the owner of land can not remove
   his own soil so as to interfere with the support of his neighbor's soil,
   this rule does not apply where the neighbor has burdened his land with
   artificial weight, as by a building. In such a case the owner of the
   improved land can only hold the adjoining owner liable for a negligent
   use of his property, or when it is reasonably certain that injury will
   result to him by reason of the intended use and there is a failure to ap-
   prise him of it.

ROBERT J. ELLIOTT FOR APPELLANT.

The owner of land adjacent to the lands of another has no right to remove
the earth and thus.withdraw the natural support of his neighbor's soil;
and if he does, he is liable for damages. (Oneil v. Harkins, 8 Bush,
651; Washburne's Easements and Servitudes, pp. 536, 539, 541, 549,
554, 555.)

O'NEAL, PHELPS & PRYOR OF COUNSEL ON SAME SIDE.

B. F. BUCKNER, BYRON BACON FOR APPELLEE.

The lateral support which A can claim for his soil from the soil of B, who
adjoins him, is limited to cases in which the soil of the complaining
party has not been burdened by the additional weight of buildings.
And the duty of an adjacent proprietor, who desires to remove old or
dilapidated buildings which stand in such close juxtaposition to those
of his neighbor that they may be presumed to yield to each other a
mutual support, is limited to the exercise of ordinary care in the re-
moval of his structures and the erection of new ones, in order that un-
necessary damage to the owner of the adjacent freehold may be

Clemens v. Speed.

avoided.    (Kerr on Injunctions, pp. 266, 376; Hieatt v. Morris, 10 Ohio St., 523; Goddard's Law of Easements, Edmund H. Bennett's ed., 1880, pp. 231, 232; Gilmore v. Driscoll, 122 Mass., 199; Mitchell v. Mayer, 49 Ga., 19; Richard v. Scott, 7 Watts, 460; Moody v. McClelland, 39 Ala., 45; Myers v. Hobbs, 57 Ala., 175; Aston v. Nolan, 63 Cal., 269; Grayford v. Nicholas, 9 Exch., 703; Partridge v. Gilbert, 15 N. Y., 601; Shreve v. Stokes, 9 B. M., 453; Wilde v. Minsterly, 2 Rolle's Abr. Tit. Trespass; Charless v. Rankins, 22 Mo., 566; Tunstall v. Christian, 80 Va., 1, overruling Stevenson v. Wallace, 27 Grat., 77; 12 Am. and Eng. Enc. of Law, 935, 936 and cases cited.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

The appellant, Clemens, and the appellee, Fanny Speed, owned adjacent store-houses on Fifth street, in the city of Louisville, with a common or party-wall between them. The lots formerly belonged to William Croghan, and the houses were erected some sixty years ago.    There is some evidence tending to show that the Clemens house was built first, but we will assume it to be true, as the appellant contends, that Croghan erected a double house with continuous front and rear walls and a common wall between, and then disposed of it, one party getting half to the center of this wall, and another party the other half of it.    In time, and after various transfers, the parties to this contest became the respective owners, and in 1886 the appellee, wishing to tear down her house and erect a larger and expensive one more suitable to the locality, which had greatly improved within the few previous years and had become a part of the center of the business portion of the city, made various proposals to the appellant of a liberal character as to the party-wall between them, and which stood equally upon the land of each of them.    They were all declined, however, and the appellee then notified the appellant that after twenty days she would tear down her building and excavate for the cellar

and begin the erection of a new six-story building, and that the appellant must co-operate with her in protecting the party-wall and his house.

This he declined to do, and in turn notified her that whatever she did must be at her peril.

The appellee's building was dilapidated, and in ruinous condition; so much so that it was untenantable; and the city authorities were about to condemn it. She employed a skillful, competent architect, and builders and workmen of the same character, by whom her old building was taken down and a fine, new one erected. She did not take away any of the party-wall, or build to it. Upon the contrary she cut the walls of her old house loose from it, and erected a wall of her own eleven inches from it, and upon her own lot. This distance between them was required in order to build a foundation for the proposed new building sufficient to support it; and in order that it might be so, it was necessary to go lower than the foundation of the thirteen-inch party-wall. To keep it from falling, and to protect it, the workmen of the appellee underpinned and shored it up.

All this was properly done, as the weight of the evidence shows, and we must so assume, because this is an ordinary action; the law and facts were by consent submitted to the court below, and he so found. The verity of his finding of facts can not be questioned. The object of the action is to recover damages for alleged injury to the appellant's building, consisting in the main of cracks in the walls of his house, which so weakened it that it had to be repaired, and which, as is claimed, were caused by the removal of appellee's old building.

The evidence is quite conflicting as to whether any

injury whatever accrued to it from the taking down of appellee's old house and the erection of the new one; but if so, the question arises, is she responsible for it? It is claimed the appellant was entitled to the lateral support afforded to his house by that of the appellee; that there was an existing easement in his behalf in this respect, and that he is therefore entitled to recover for any damage resulting to his house from the taking down by the appellee of her old house and the erection of the new one.

Counsel for the appellant assert that if A owns a lot, and builds thereon a double house with continuous front and back walls, and a party-wall between, and then sells half the lot to the center of the party-wall with all appurtenances, there passes to the vendee and all subsequent vendees as against the vendee of the other half, an existing easement in the form of a right to reciprocal support from the building of the latter.

It must be borne in mind in considering this case that the appellee removed no part of the party-wall and did not build to it; and that in removing her old building and erecting the new one, including all that was done in the way of underpinning and shoring up the party-wall, the work was prudently and carefully done by competent workmen.

It is well settled that the owner of land adjacent to another can not remove the earth upon his own land so as to withdraw the support of his neighbor's soil. If he attempts to do so he may be enjoined, or if done, he is responsible in damages. This right is *ex jure naturæ*, but it applies only to land in its natural estate. By both the ancient and present common law A can not dig a pit upon his land so near the edge of it that B's land will

tumble into it; but this rule does not apply where B has burdened his land with artificial weight, as by a building. It is strictly confined to cases where he has not thus increased the lateral pressure. The adjoining owner can not by changing the natural condition of his land take away his neighbor's right to the use he could have made of it in the absence of such change. He can not load down his own soil so as to require the support of his neighbor's.

In such a case the owner of the improved land can only hold the adjoining owner liable for a negligent use of his property, or where there is a failure to apprise him of the intended use and it is reasonably certain injury will result to him by reason of it.

In this case the appellee merely made use of her own property. She notified the appellant of her intention, and used reasonable care in the execution of it.

Kent says: "If the owner of a house in a compact town finds it necessary to pull it down and remove the foundation of his building, and he gives notice of his intention to the owner of the adjoining house, he is not answerable for the injury which the owner of that house may sustain by the operation, provided he remove his own with reasonable and ordinary care." (3 Kent, 437.)

It is said, however, that a right may be acquired in the form of an easement to support from an adjoining building; that the right of each owner in the use of his own property is then so far qualified that he can not take away this support, however prudent and careful he may act in doing so, without furnishing absolute protection in some way, and that this right of the adjoining owner is absolute in its character.

Clemens v. Speed.

We can not assent to such a doctrine. It would be a rule at war with reason and justice. It would make the owner an insurer of his neighbor's house in case he desired to take down his own, or was compelled to remove it owing to its condition. It would make him liable for all damage, however carefully he may have acted. It would in great measure prevent all improvement. Whatever may be the English doctrine, such a rule has not been and should not be adopted in a changing, growing country like this one, any more than the doctrine of ancient lights, which has been rejected. If A and B buy adjoining houses, and that of A is supported by a wall altogether upon B's land and belonging to him, an easement as to such support may exist or arise in A.'s favor. B purchases with a knowledge of it, and takes any existing burden. This was the case in Henry v. Koch, &c., 80 Ky., 391, but this one is quite different. It is difficult to see how an easement, or prescriptive right, can be acquired to the lateral support of another's building, when that of each owner is altogether upon his own land. Each has a right to build, and the one can not prevent the other from deriving the benefit of such support. It can not be said it has existed with his consent, and that a grant and right to the use is to be presumed from lapse of time, because the owner of the alleged servient estate has had no right in the meantime to prevent such a benefit. He can not with any effect raise his voice against it. It must result, or he can not use his own property or have a building of his own. A right by prescription results from acquiescence; this is its basis; and it seems to us none is to be implied where the adverse party has no right and can invoke no remedy to prevent it. There is no encroachment upon

his rights, no adverse user, and nothing being done to enable him to resort to a legal remedy. The other party can not properly be said to be enjoying something so as to invest him with the legal right to such enjoyment, when no power exists to prevent it.

A man improves his property, knowing there must be changes in the improvement adjoining it, and it would be a harsh and unjust rule if he could improve as he chooses, and tie his neighbor down from doing so, however careful he may act.

If the latter proposes to remove his building, and injury is likely to result therefrom to the building of his neighbor, he must notify him of his intention, that he may look to his own protection; and in making the removal or erecting a new building he must use reasonable care and precaution to protect that neighbor; but if all this is done, and yet injury results, it is *damnum absque injuria*, and no action will lie.

Judgment affirmed.